Case 1:15-cv-00450-JJM-LDA   Document 49   Filed 08/12/19   Page 1 of 21 PageID #: 442

# UNITED STATES DISTRICT COURT
# DISTRICT OF RHODE ISLAND

### CLASS ACTION REQUESTED AND CHALLENGE TO CONSTITUTIONALITY OF STATE STATUTE

| | |
|---|---|
| THEODORE CHAPDELAINE, RICHARD MOREAU, FREDERICK KENNEY, each individually and on behalf of all persons similarly situated, MICHAEL CLINTON, and RHODE ISLAND HOMELESS ADVOCACY PROJECT<br><br>v.<br><br>PETER NERONHA, in his official capacity as Attorney General of the State of Rhode Island, and PATRICIA COYNE-FAGUE, in her official capacity as Director of the Department of Corrections of the State of Rhode Island | C.A. No.  15-450-JJM-LDA |

## SECOND AMENDED COMPLAINT WITH CLASS ACTION ALLEGATIONS

Plaintiffs, individually and on behalf of all persons similarly situated, are persons subject to the registration requirements of the Sexual Offender Registration and Community Notification Act of the State of Rhode Island, chapter 11-37.1 of the General Laws of the State of Rhode Island, and hereinafter referred to as "SORNA," and have been placed at "tier" or "level" 3 within the meaning of SORNA.  Plaintiffs seek classwide declaratory and injunctive relief to prohibit enforcement of §11-37.1-10(d) of the Rhode Island General Laws, enacted on July 10, 2015 and amended effective July 1, 2020, hereinafter referred to as "the Residency Prohibition" and "the 2020 Residency Prohibition," respectively, as violative of their rights under the United States Constitution and 42 U.S.C. §1983, on its face and as applied.

Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.  This action is brought pursuant to 42 U.S.C. §1983.  The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343 and 2201.

2.  Venue is properly lodged in the District of Rhode Island pursuant to 28 U.S.C. § 1391(b).

## PLAINTIFFS

3.  Plaintiffs Chapdelaine, Moreau, and Kenney are all residents of the State of Rhode Island. Each said individual Plaintiff brings this action on behalf of himself and all persons similarly situated.

4.  Each individual plaintiff, prior to July 10, 2015 and prior to July 1, 2020, had been convicted of a criminal offense within the meaning of §11-37.1-3 of SORNA and had been assigned to "tier" or "level" 3 within the meaning of SORNA.

5.  Plaintiff Richard Moreau as of April 11, 2016 is 44 years old and has resided with his mother in the mobile home that she owns in West Greenwich, Rhode Island since his release from incarceration in December 2012.  Plaintiff Moreau is a level 3 sex offender having been convicted of first and second degree child molestation in 2000.  In both cases, the victims were known to him through an acquaintance.  Upon release from incarceration in December 2012, Moreau moved to live with his mother at the West Greenwich address. Plaintiff Moreau has been legally blind since in or about 2001.  He is dependent upon his mother or others for assistance in mobility outside of his home.  In or about September 2015, Plaintiff Moreau was informed by Sgt. Brown of the West Greenwich Police Department of the Residency Prohibition and of Sgt. Brown's assessment that a day care nearby was more than 1000 feet from Moreau's residence.  In March 2016, Plaintiff

Case 1:15-cv-00450-JJM-LDA   Document 42   Filed 08/12/19   Page 3 of 21 PageID #: 444

Moreau was informed by Sgt. Brown that, as a result of reconsideration of the requirements of the Residency Prohibition, Moreau's residence fell within 1000 feet of the day care and that, but for the injunction issued by this Court, he would be subject to criminal enforcement under the Residency Prohibition if he remained in his current residence.

a.      Former plaintiff John Freitas, who passed away on or about January 23, 2016, was 62 years of age and  resided in an apartment on Goddard Street in  Providence, Rhode Island along with his fiancé, Barbara Kalil, for more than three years.  Freitas was a level 3 sex offender having been convicted of indecent assault and battery on a child in 1983 and failing to register as a sex offender in 2013.  Freitas was previously homeless for a six-year period until he obtained his then-current housing in 2012.  He had been notified that he had until November 2, 2015 to vacate his current residence or face felony prosecution for violation of the Residency Prohibition.  To date, he had been unable to find alternative housing and, but for the issuance of injunctive relief,  he would have been forced to reside at the Harrington Hall Homeless Shelter, located at 30 Howard Avenue, Building 58, Cranston, Rhode Island (hereinafter "Harrington Hall") .

6.      Plaintiff Theodore Chapdelaine as of October 29, 2015 is 53 years old and has resided at his family-owned home on Providence Pike in North Smithfield, Rhode Island since the age of 16 with his parents.  Plaintiff Chapdelaine is a level 3 sex offender having been convicted of second degree child molestation in 1994 and 2004.  In both cases, the victims were related to his acquaintances.  Upon release from incarceration in April of 2015, Chapdelaine moved back to his North Smithfield address and has lived with his parents and, since his father's death in October 2015, with his mother and his disabled adult brother.  In October of 2015 the North Smithfield Police Department notified Plaintiff

Chapdelaine that he was in violation of the Residency Prohibition and gave him 36 hours to move or be arrested and prosecuted.  Since this notice, Plaintiff Chapdelaine lived at various motels located on Route 146 in North Smithfield in an unsuccessful attempt to find alternative housing. After enforcement of the Residency Prohibition was enjoined, Plaintiff Chapdelaine returned to his family home in North Smithfield where he resides with his mother, until her death, and with his adult disabled brother, for whom he provides care.

7. Plaintiff Frederick Kenney as of October 29, 2015 is 60 years of age and currently resides in a rooming house on Hendricks Street in Providence, Rhode Island, where he also serves as the manager of the rooming house.  Plaintiff Kenney is a level 3 sex offender having been convicted of second degree child molestation in 1997.  He has been notified that he has until November 2, 2015 to vacate his current residence or face felony prosecution for violation of the Residency Prohibition.  He has located three other potential apartments but has been advised by Providence Police that they would still violate the Residency Prohibition.  As a result, but for the issuance of injunctive relief, he will be forced to live at Harrington Hall.

8. Plaintiff Michael Clinton as of October 29, 2015, is 44 years of age and was convicted of indecent assault on a child in 1995 and failure to register as a sex offender in 2014. He has rented an apartment on Mineral Spring Avenue in Pawtucket for the past 18 months.  The Pawtucket Police Department has notified Plaintiff Clinton that his residence violates the Residency Prohibition and he must move by January 2, 2016 or face prosecution.  Upon information and belief, Plaintiff Clinton is now living outside of the State of Rhode Island.

9. Plaintiff RHODE ISLAND HOMELESS ADVOCACY PROJECT ("RIHAP") is a charitable organization advocating for the rights and interests of Rhode Island's homeless

Case 1:15-cv-00450-JJM-LDA   Document 42   Filed 08/22/19   Page 5 of 21 PageID #: 446

and housing insecure population (hereinafter referred to collectively as "homeless"). RIHAP has been in existence since in or about 2010 and was incorporated in or about August 2017.

a.      Among the issues of importance to the members of RIHAP are access to public transportation, housing, nightly outreach to homeless on the streets, and access to overnight shelters.

b.      RIHAP's members include homeless persons who rely upon access to homeless shelters for overnight accommodation as their only alternative to being forced to sleep or camp overnight on the street.

c.      RIHAP's members include level 3 registered sex offenders.

d.      Deceased plaintiff Freitas was one of the founding members of RIHAP.

e.      Members of RIHAP include other individuals similarly situated to the individual plaintiffs, in that they are registered sex offenders who currently reside in the State of Rhode Island who were or are convicted of offenses that require registration under SORNA pursuant to Rhode Island General Laws §§ 11-37.1-1 *et seq.* and have been, or will be, assigned to "tier" or "level" 3 and are therefore subject to the Residency Prohibition and the 2020 Residency Prohibition contained in §11-37.1-10(d).

f.      RIHAP brings this action in its representative capacity on behalf of its members, and references to RIHAP as "plaintiff" hereinafter refer to its members.

## **DEFENDANTS**

10.    Defendant Peter Neronha is the Attorney General of the State of Rhode Island and as such is ultimately responsible for enforcement, including criminal prosecutions, of the

5

Residency Prohibition.  Defendant Nerohna is hereinafter referred to as "the Attorney General."

11.  Defendant Patricia Coyne-Fague is the Director of the Department of Corrections of the State of Rhode Island and as such is ultimately responsible for the Department's Division of Adult Probation and Parole, which, along with other law enforcement agencies, is responsible to notify persons subject to SORNA of their registration and other obligations thereunder.  Defendant Coyne-Fague is hereinafter referred to as "the Director of the Department of Corrections."

12.  With respect to all matters complained of herein, the Defendants act or have acted under color of state law within the meaning of 42 U.S.C. §1983.

13.  Each Defendant is sued herein in his or her official capacity.

14.  Defendants are hereinafter referred to collectively as "the State."

## CLASS ACTION ALLEGATIONS

15.  The individual Plaintiffs Chapdelaine, Kenney and Moreau bring this action on behalf of themselves and a statewide class (hereinafter "the Class") of similarly situated persons defined as: all persons currently residing in, and those who may in the future relocate to, the State of Rhode Island who were or are convicted of offenses that require registration under SORNA pursuant to Rhode Island General Laws §§ 11-37.1-1 *et seq*. and have been, or will be, assigned to "tier" or "level" 3 and are therefore subject to the Residency Prohibition and the 2020 Residency Prohibition contained in §11-37.1-10(d).

16.  The Class seeks certification of claims for declaratory and injunctive relief.

17.  Excluded from the Class are any persons as to whom a criminal charge or indictment for alleged violation of the Residency Prohibition is pending.

Case 1:15-cv-00450-JJM-LDA Document 42 Filed 08/22/19 Page 7 of 21 PageID #: 448

18.     Plaintiffs reserve the right to seek to modify the Class definition based on the results of

discovery.

19.     **Numerosity**: The Statewide Class (collectively referred to below as the "Class") is so

numerous that the individual joinder of all members, in this or any action, is impracticable.

Upon information and belief, the Class numbers over 150 persons.

20.     **Commonality**: There is a well-defined community of interest in the questions of law and

fact involved affecting the members of the Class.

21.     **Typicality**: The issues and evidence that are to be presented in this case are typical among

the named Plaintiffs and Defendants because each Plaintiff's claim arises from the same

course of events and the theory of liability against Defendants is the same among all

Plaintiffs similarly affected.

22.     **Adequate Representation**: Plaintiffs are adequate representatives of the Class because

their interests do not conflict with the interests of the members of the Class they seek to

represent.

23.     All Class Counsel are qualified and experienced to handle this type of litigation and can

represent the Plaintiffs and Plaintiff Class Members fairly and adequately.

24.     Class certification is appropriate under Rule 23(b)(1) and/or 23(b)(2) in that the

prosecution of separate actions by or against individual members of the Class would create

a risk of inconsistent or varying adjudications, which would establish incompatible

standards of conduct for the party opposing the Class.

25.     Class certification is appropriate under Rule 23(b)(1) and/or 23(b)(2) in that adjudications

with respect to individual members of the Class would as a practical matter be dispositive

of the interests of the other members of the Class or substantially impair or impede their ability to protect their interest.

## STATEMENT OF CLAIM

26.     Prior to July 10, 2015, and prior to July 1, 2020, Plaintiffs were each convicted of offenses that require registration under SORNA, pursuant to Rhode Island General Laws §§ 11-37.1-1 *et seq.*, and assigned to "tier" or "level" 3 thereunder.

27.     Upon information and belief, SORNA was enacted in 1996 to require that certain individuals convicted of enumerated offenses be required to register their residence with the State.  SORNA also provided for maintenance of a registration database and, for certain offenders, community notification.

28.     Effective July 2, 2008, SORNA was amended to prohibit persons subject to its terms from residing "within three hundred feet (300') of any school, public or private," § 11-37.1-10(c).

### Allegations Applicable to the Residency Prohibition
### Effective July 10, 2015 through June 30, 2020

29.     Effective July 10, 2015, SORNA was amended to prohibit persons subject to its terms assigned to tier 3 from residing "within one thousand feet (1000') of any school, public or private," § 11-37.1-10(d)," as follows:

(d)  Any level three (3) sex offender who knowingly resides within one thousand feet (1,000') of any school, public or private, shall be guilty of a felony and upon conviction may be imprisoned not more than five (5) years, or fined not more than five thousand dollars ($5,000), or both.

30.     SORNA does not contain a definition of "school, public or private."

31.     The absence of a definition of the term "school, public or private" requires Plaintiffs and members of the Class to guess at the meaning of the term.

8

32. The absence of a definition of the term "school, public or private" subjects Plaintiffs and members of the Class to discretionary, inconsistent, and arbitrary interpretation by local law enforcement and the State.

33. The term "school, public or private" does not distinguish schools based upon the age of the students or the type of "school" it is.

34. Upon information and belief, certain local law enforcement agencies have announced their interpretation of "school" to include licensed day care facilities that provide "pre-kindergarten" classes.

35. Upon information and belief, the term "school, public or private," could be interpreted to include an adult dance school, a yoga studio, or a school for the culinary arts, cosmetology or martial arts.

36. SORNA does not authorize or direct the Attorney General or any other agency to promulgate any uniform guidance as to the meaning of the term "school, public or private."

37. The Residency Prohibition contains no exemption for persons subject to its terms who established their residence prior to its effective date, including those who own or owned their own home, possess or possessed a leasehold or tenancy, reside or resided with family members or significant others, or reside or resided in a treatment facility or assisted living.

38. SORNA does not contain a definition of the term "within one thousand feet (1,000')" of any school nor any language as to how the distance is to be measured or calculated.

39. The absence of a definition of the term "within one thousand feet (1,000')" requires Plaintiffs and members of the Class to guess at the meaning of the term.

40. The absence of a definition of the term "within one thousand feet (1,000')" subjects Plaintiffs and members of the Class to discretionary, inconsistent, and arbitrary interpretation by local law enforcement and the State.

41. The term "within one thousand feet (1,000')" is not capable of a single definitive measurement.

42. Upon information and belief, certain local law enforcement agencies have announced their interpretation of the term to mean a measurement from the outermost edge of an individual's residence to the outermost edge of a "school" facility, including parking lots and fields.

43. Upon information and belief, the measurement method used by the Division of Probation and Parole within the Department of Corrections to calculate the distance of 1000 feet is different from the method being used by some local law enforcement agencies.

**Allegations Applicable to the 2020 Residency Prohibition**
**Effective July 1, 2020**

44. Effective July 1, 2020, § 11-37.1-10(d) of SORNA will, pursuant to "the 2020 Residency Prohibition," be amended to prohibit persons subject to its terms assigned to tier 3 from residing "within one thousand feet (1000') of any school" as follows:

> (d) Any level-three (3) sex offender who knowingly resides within one thousand feet (1,000') of any school as defined in §11-37.1-2, which distance shall be measured from the nearest boundary line of the real property supporting the residence of the person to the nearest boundary line of the real property that supports or upon which there exists a school shall be guilty of a felony and, upon conviction, may be imprisoned for not more than five (5) years, or fined not more than five thousand dollars ($5,000), or both.

45. SORNA as amended effective July 1, 2020, defines a school in §11-37.1-2(u) to mean "the buildings and real property of kindergarten, elementary, middle, and secondary institutions, whether public or private."

10

46.     Until July 1, 2020, the State will continue to assert that the Residency Prohibition applies to pre-kindergarten programs, subjecting Plaintiffs and members of the Class to discretionary, inconsistent, and arbitrary interpretation by local law enforcement and the State.

47.     On and after July 1, 2020, the 2020 Residency Prohibition will not apply to pre-kindergarten programs.

48.     On and after July 1, 2020, the definition of "school" will include not only the physical structure housing the school, but also "the real property that supports or upon which there exists a school."

49.     The absence of a definition of the term "the real property that supports or upon which there exists a school" requires Plaintiffs and members of the Class to guess at the meaning of the term.

50.     On and after July 1, 2020, the definition of "residence" will include not only the physical structure in which the individual resides, but also "the real property supporting the residence of the person."

51.     The absence of a definition of the term "the real property supporting the residence of the person" requires Plaintiffs and members of the Class to guess at the meaning of the term.

52.     The absence of a definition of the terms "the real property supporting the residence of the person" subjects Plaintiffs and members of the Class to discretionary, inconsistent, and arbitrary interpretation by local law enforcement and the State.

53.     SORNA does not authorize or direct the Attorney General or any other agency to promulgate any uniform guidance as to the meaning of the terms "the real property that supports or upon which there exists a school."

Case 1:15-cv-00450-JMS-DA Document 44 Filed 08/12/19 Page 12 of 21 PageID #: 453

54.     The 2020 Residency Prohibition contains no exemption for persons subject to its terms who established their residence prior to its effective date, including those who own or owned their own home, possess or possessed a leasehold or tenancy, reside or resided with family members or significant others, or reside or resided in a treatment facility or assisted living.

55.     The 2020 Residency Prohibition in SORNA states that the term "within one thousand feet (1,000')" should be measured "from the nearest boundary line of the real property supporting the residence of the person to the nearest boundary line of the real property that supports or upon which there exists a school."

56.     Upon information and belief, the term "real property that supports or upon which there exists a school" is capable of numerous interpretations, including as narrow as the exact perimeters of the land directly beneath a school building where students receive instruction, or including all parking lots, grounds and non-instructional buildings of a school, to as broad as including the buildings and boundary lines of all municipal buildings providing administrative and budgetary support for public schools within a school district.

57.     Upon information and belief, the term "the real property supporting the residence of the person" is capable of numerous interpretations, including as narrow as the exact perimeters of the land directly beneath a house or apartment unit where the individual lives, to as broad as the boundary lines encompassing all parking lots, grounds and non-residential buildings comprising a multi-unit apartment complex.

58.     The absence of a definition of the terms "the real property supporting the residence of the person" and "real property that supports or upon which there exists a school" precludes the

determination of a single definitive determination of applicable boundary lines from which to calculate measurements to apply the 2020 Residency Prohibition.

**Allegations Applicable to both the Residency Prohibition
and the 2020 Residency Prohibition**

59. SORNA does not authorize or direct the Attorney General or any other agency to promulgate any uniform guidance on how or where to measure the distance of 1000 feet in implementing the Residency Prohibition or the 2020 Residency Prohibition.

60. Upon information and belief, in September 2015, the Director of the Department of Corrections, by and through the Division of Probation and Parole, sent a notice to certain Tier 3 registrants residing in the City of Providence, requiring them to attend a meeting on September 30, 2015 at the Providence Public Safety Complex upon threat of having their probation or parole violated.

61. At this meeting, the members of the Class attending, including Plaintiff Kenney, were advised that their residences fell within 1000 feet of a school and that they had to relocate no later than November 2, 2015, or they would be prosecuted for violation of the Residency Prohibition.

62. Upon information and belief, attendees at this meeting were given no individualized notice as to the specific school that was located within 1000 feet of their residence, but instead were told to review maps that had been posted at the meeting in order to obtain that information.

63. Upon information and belief, attendees at this meeting were advised that, if they were a tenant with a lease in a residence within 1,000 feet of a school, they would be required to break their lease.

13

64. Upon information and belief, attendees at this meeting were advised that, if prior to September 30, 2015, they owned their residence and it is within 1,000 feet of a school, they would not be required to move.

65. Upon information and belief, attendees at this meeting, when the question was raised, were given no definitive answer as to whether a member of the Class who was married and living in a home within 1,000 feet of a school but whose name was not on the deed to the property would be required to move.

66. Upon information and belief, attendees at this meeting were advised that if they presently lived in a location that was not within 1000 feet of a school, but a school was later established within 1000 feet of their residence, they would be required to move.

67. Upon information and belief, attendees at this meeting were advised that a day care facility providing pre-kindergarten classes is considered a school for purposes of the Residency Prohibition, but that a day care facility without such classes would not be considered a school requiring a person to move.

68. The Residency Prohibition and the 2020 Residency Prohibition contain no procedure to apply for a hardship exemption based upon illness, advanced age, financial hardship, disability, or any other reason.

69. The Residency Prohibition and the 2020 Residency Prohibition contain no procedure for an individual to contest the State's determination that he or she resides within 1000 feet of a school.

70. Depending on how the measurement of 1000 feet is calculated, some members of the Class may or may not be subject to the Residency Prohibition or the 2020 Residency Prohibition.

71.   Depending on what the definition of a school is, some members of the Class may or may not be subject to the Residency Prohibition or the 2020 Residency Prohibition.

72.   The Residency Prohibition and the 2020 Residency Prohibition do not prohibit Plaintiffs or members of the Class from working, traveling, spending the day, or "being" "within one thousand feet (1000')" of a school however defined by the Residency Prohibition or the 2020 Residency Prohibition, so long as they do not "reside" there.

73.   The Residency Prohibition and the 2020 Residency Prohibition contain no "grandfather" provision for Plaintiffs or members of the Class who presently own a home or otherwise reside within 1000 feet of a school.

74.   Upon information and belief, individuals affected by the Residency Prohibition have been given varying amounts of time to comply with the law depending on the municipality in which they reside.

75.   For instance, Plaintiff Chapdelaine in North Smithfield was given 36 hours to move after being notified that the Residency Prohibition required him to move or be arrested.

76.   For instance, Providence residents, including Plaintiff Kenney, were informed on September 30, 2015 that they must move by November 2, 2015 or face prosecution or parole violation.

77.   For instance, residents of Pawtucket, including Plaintiff Clinton, were notified in mid-October that they must move no later than January 2, 2016 or be prosecuted.

78.   Upon information and belief, every emergency shelter in the State but one that has provided shelter to homeless members of the Class is no longer able to do so because of the Residency Prohibition and the 2020 Residency Prohibition. This includes the elimination of all available shelters in Providence, Woonsocket and Newport.

79. Upon information and belief, the only shelter that has provided shelter to homeless members of the Class that is not subject to the Residency Prohibition and the 2020 Residency Prohibition is Harrington Hall, located at the Pastore Complex of the State of Rhode Island on the grounds of the Adult Correctional Institutions.

80. Harrington Hall is available to men only and does not admit the individual's family members or significant others.

81. Harrington Hall provides communal sleeping quarters in a common area with no privacy or assigned personal space.

82. Moving from a residence to a shelter or being forced into homelessness imposes registration burdens on Plaintiffs and members of the Class and also will make it more difficult or impossible for some to access required counseling, medical, substance abuse or other treatment services.

83. Upon information and belief, persons convicted of sex offenses are generally ineligible for public housing.

84. As a direct result of the Residency Prohibition and the 2020 Residency Prohibition, a number of Plaintiffs and members of the Class have been made or will be made homeless to avoid prosecution for violation of the Residency Prohibition and the 2020 Residency Prohibition.

85. The Residency Prohibition and the 2020 Residency Prohibition will have a profound effect on Plaintiffs Chapdelaine, Moreau, RIHAP members and members of the Class who, but for the Residency Prohibition and the 2020 Residency Prohibition, do live or would choose to live with members of their family or significant others but are prevented and prohibited from doing so.

16

86. Upon information and belief, stable housing has been found to be an important component in reducing recidivism by past offenders, but the Residency Prohibition and the 2020 Residency Prohibition will instead produce housing instability.

87. Upon information and belief, increases in homelessness and transience make it more difficult for law enforcement officials to monitor members of the Class.

88. Upon information and belief, the vast majority of victims of sex offenses are known to the offender and are not victimized by strangers.

89. The Residency Prohibition and the 2020 Residency Prohibition apply to sex offenders whose offense was committed against an adult.

90. Upon information and belief, without injunctive relief, given the threat of imminent prosecution of the Plaintiffs, RIHAP members and the Class if they do not leave their homes, Plaintiffs and the Class will suffer irreparable harm to their emotional, mental and physical well-being, and may be faced with imminent homelessness, potentially extensive financial burdens, separation from family, increased burdens in complying with parole and probation obligations and other hardships.

91. Upon information and belief, there is no adequate remedy at law for the harm to the Plaintiffs and the Class.

92. Upon information and belief, issuance of injunctive relief will preserve the status quo immediately before the implementation of the Residency Prohibition and the 2020 Residency Prohibition and threat of prosecution upon Plaintiffs and the Class.

93. Upon information and belief, there will be no harm suffered by the Defendants if injunctive relief is granted.

94.    Upon information and belief, the public interest will be served by allowing Plaintiffs and the Class to reside in stable home environments, as opposed to the unstable and potentially harmful environment of homelessness.

## COUNT I (Unconstitutionally Vague)

95.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 94 of the Second Amended Complaint as if fully set forth herein.

96.    Under the Due Process Clauses of the Fifth and Fourteenth Amendments to the United States Constitution, a state statute must define criminal conduct with "sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

97.    As Rhode Island General Laws § 11-37.1-10(d) reads under the definition in effect from July 10, 2015 to June 30, 2020, ordinary people cannot understand whether a registered sex offender is residing within one thousand feet (1000') of a school, public or private.

98.    As Rhode Island General Laws § 11-37.1-10(d) reads under the definition in effect as of July 1, 2020, ordinary people cannot understand whether a registered sex offender is residing within one thousand feet (1000') of a school.

99.    The Residency Prohibition and the 2020 Residency Prohibition deny due process to plaintiffs and the Class both on their face and as applied, in violation of the Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. §1983.

## COUNT II (Substantive Due Process)

100.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 94 of the Second Amended Complaint as if fully set forth herein.

101.    The Residency Prohibition and the 2020 Residency Prohibition of R.I. Gen. Laws § 11-37.1-10(d) interfere with Plaintiffs' and the Class' fundamental rights to family privacy, specifically the right to cohabit with one's family, and of association, and is not narrowly tailored to serve a compelling governmental interest.

102.    The Residency Prohibition and the 2020 Residency Prohibition interfere with Plaintiffs' and the Class' liberty and privacy interests while bearing no rational relationship to a legitimate purpose.

103.    The Residency Prohibition and the 2020 Residency Prohibition deprive Plaintiffs and the Class of the basic right to be free of unreasonable, arbitrary and oppressive official action.

104.    The Residency Prohibition and the 2020 Residency Prohibition deny Plaintiffs and the Class rights to substantive due process in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

### COUNT III (Procedural Due Process)

105.    Plaintiffs incorporate the allegations contained in paragraphs 1 through 94 of the Second Amended Complaint as if fully set forth herein.

106.    The Residency Prohibition and the 2020 Residency Prohibition deny Plaintiffs' and the Class' liberty and property interest without due process of law in that the Residency Prohibition and the 2020 Residency Prohibition afford no opportunity for Plaintiffs and the Class to challenge a determination that their residence is within 1000 feet of a school.

107.    The Residency Prohibition and the 2020 Residency Prohibition deny Plaintiffs and the Class rights to procedural due process in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

Case 1:15-cv-00450-JJM-LDA Document 44 Filed 08/12/19 Page 20 of 21 PageID #: 461

**COUNT IV (*Ex Post Facto* Law)**

108.     Plaintiffs incorporate the allegations contained in paragraphs 1 through 94 of the Second
Amended Complaint as if fully set forth herein.

109.     The Residency Prohibition and the 2020 Residency Prohibition of R.I. Gen. Laws § 11-
37.1-10(d) constitute a retroactive punishment for Plaintiffs and the Class.

110.     The Residency Prohibition and the 2020 Residency Prohibition constitute an ex post facto
law as applied to Plaintiffs and the Class, in violation of Article I, § 10, clause 1 of the
United States Constitution, and 42 U.S.C. §1983.

     **WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor
and against Defendants as follows:

(1)     Grant temporary and preliminary injunctive relief restraining the State from enforcing the
Residency Prohibition and the 2020 Residency Prohibition of R.I.G.L. §11-37.1-10(d)
pending determination on the merits;

(2)     Certify a class of all persons currently residing in, and those who may in the future relocate
to, the State of Rhode Island who were, or will be, convicted of offenses that require
registration under the Rhode Island Sexual Offender Registration and Community
Notification Act pursuant to Rhode Island General Laws §§ 11-37.1-1 *et seq.* and have
been assigned, or will be assigned, to "tier" or "level" 3 and therefore subject to the
Residency Prohibition and the 2020 Residency Prohibition contained in §11-37.1-10(d).

(3)     After hearing on the merits, issue its declaratory judgment that Rhode Island General Laws
§ 11-37.1-10(d), as enacted effective July 10, 2015, and as amended effective July 1, 2020,
is unconstitutional both on its face and as applied to Plaintiffs and the Class and grant

Case 1:15-cv-00450-JJM-LDA Document 42 Filed 08/12/19 Page 21 of 21 PageID #: 462

corresponding injunctive relief permanently enjoining the State from enforcing the Residency Prohibition.

(4)    Award Plaintiffs their costs, including reasonable attorneys' fees; and

(5)    Grant such other and further relief as the Court deems just and proper.

By their attorneys,

  /s/ Lynette Labinger
Lynette Labinger  #1645
128 Dorrance Street Box 710
Providence, RI 02903
(401) 465-9565 -tel
LL@labingerlaw.com


  /s/ John E. MacDonald
John E. MacDonald  #5368
Law Office of John E. MacDonald, Inc.
One Turks Head Place, Suite 1440
Providence, RI 02903
(401) 421-1440 -tel
(401) 421-1442 -fax
jm@jmaclaw.com

Cooperating counsel,
AMERICAN  CIVIL  LIBERTIES  UNION
FOUNDATION OF RHODE ISLAND


# CERTIFICATION

I hereby certify that on August 12, 2019, a true copy of this document was delivered electronically using the CM/ECF system to all counsel of record.

  /s/ Lynette Labinger
Lynette Labinger        #1645