**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| THEODORE CHAPELAINE, *et al.*,<br>Plaintiffs,<br><br>v.<br><br>PETER NERONHA, in his official capacity as Attorney General of the State of Rhode Island, *et al.*,<br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | C.A. No. 15-cv-450-JJM-LDA |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court on special referral to me for determination is the renewed and revised motion to compel discovery (ECF No. 70) filed by Plaintiffs, a class of current and future Level III sex offenders residing in Rhode Island. Plaintiffs seek to overcome objections and procure more responsive answers to discovery that they propounded to Defendants, the Rhode Island Attorney General and the Director of the Rhode Island Department of Corrections ("RIDOC"), both sued in their official capacities (collectively, the "State").

## I. Background

This case challenges the constitutionality of a provision that is part of the Rhode Island Sex Offender Registration and Community Notification Act ("SORNA") – specifically, Rhode Island's 1000-foot-of-school residency prohibition for Level III sex offenders, which was originally enacted in 2015 and amended in 2018, ultimately to be effective as of July 1, 2020.[1] R.I. Gen. Laws § 11-37.1-10(d) (hereinafter, the "2020 Residency Prohibition Act"). As grounds for their challenge, Plaintiffs contend in Count I of their Second Amended Complaint that the

[1] The Court's restraining order preventing enforcement of the 2020 Residency Prohibition Act remains in effect. ECF No. 6.

2020 Residency Prohibition Act is unconstitutionally vague in that it is difficult, if not impossible, for ordinary people, including class members themselves, to ascertain where it is legally permissible for them to live without risk of felony prosecution; Plaintiffs also allege that the Act's vagueness will result in arbitrary and discriminatory enforcement by the State. ECF No. 49 ¶¶ 95-99. In the remaining Counts, Plaintiffs allege that the 2020 Residency Prohibition Act deprives them of their substantive due process rights by interfering with their rights of association and liberty; of their procedural due process rights in that the Act has no mechanism for challenging a prosecutorial determination that living in a current or proposed residence is a felony; and (as to members of the class whose underlying offense conduct preceded the passage of the Act) of their rights pursuant to the Ex Post Facto clause (U.S. Const., Art. I, § 10, cl. 1) to be free from retroactive punishment. ECF No. 49 ¶¶ 100-110. The latter allegation rests on the contention that the Act adds a new punishment because it effectively bars these Level III sex offenders from living in their existing homes and/or finding new homes, particularly because it bans them from vast swaths of the urban areas where shelters, affordable housing, work opportunities and public transportation are available. Id.

Pursuant to the Revised Scheduling Order entered by the Court on October 7, 2021, the Count I vagueness challenge (designated as Stage I) has been bifurcated from the other issues (Stage II) and will be dealt with first by the Court. ECF No. 69 ¶ 2. The Scheduling Order contemplates that Plaintiffs would refile their motion to compel discovery (which was previously denied without prejudice because the case had been stayed) and that the Court would promptly address the motion, taking into account the bifurcation, with any ordered discovery pertaining to the vagueness challenge (Stage I) to flow immediately and the remainder (pertinent to Stage II) stayed pending further order of the Court. Id. ¶¶ 4-5, 7. Plaintiffs complied by timely filing the

instant motion; the State timely filed its opposition. Following a hearing held on November 10, 2021, the motion is now ready for determination.

The discovery in issue is a group of Interrogatories propounded in sequentially filed sets (punctuated by the parties' meeting and conferring) denominated as Interrogatories 9, 11, 12, 14 and 15. ECF No. 70. Each is laser-focused on various aspects of how to determine where it is permissible for a Level III sex offender to reside. Briefly, Interrogatory 9 asks for the State's overarching interpretation of how to ascertain school and residential boundaries for purposes of making the 1000-foot measurement. Id. at 7. Interrogatories 11 and 12 ask the State to apply this interpretation to all schools and the residences of all Level III sex offenders as of a fixed point in time. Id. at 9-10. Interrogatory 14 follows up on the response to Interrogatory 9 by asking the State to focus on particularly knotty matters affecting the interpretation of the Act (such as parking lots, playing fields, sports facilities, and multi-unit or multi-building residential complexes). Id. at 12. To address the burden problems with Interrogatories 11 and 12, Interrogatory 15 asks for the State's interpretation as applied[2] to four specific schools, two specific residences (a shelter and a mobile home in a trailer park) and three homeless individuals. Id. at 14-15.

In response, the State has struggled in good faith to provide answers, including by answering and subsequently supplementing some with answers that appears different from the first. To sidestep the difficulties, the State has persistently asserted a set of General Objections,[3]

[2] Unlike Interrogatories 11 and 12, Interrogatory 15 does not specify that the answer must focus on a fixed point in time. However, Interrogatory 15 expressly states that it is intended as a follow-up to Interrogatories 11 and 12. During the hearing, Plaintiffs clarified that the intent of the question is to get the actual answer as of a fixed point in time, which is what a Level III sex offender looking for a home must be able to do and therefore what is relevant to the issues in the case. Based on this clarification, I find that Interrogatory 15 is properly interpreted as asking for a specific answer as of a fixed moment, which the State may pinpoint in its discretion.

[3] The State's General Objections may be briefly summarized: they assert that all of the Interrogatories are vague, overbroad as to scope and time and in defining the "State" and "Defendants," unduly burdensome, and seek

has failed to comply with the Fed. R. Civ. P. 26(b)(5)(A) requirement that a log must be supplied to support an objection based on privilege, and has answered with conditional generalities, without providing a bottom-line answer as of a fixed moment in time (as called for by Interrogatories 11, 12, and 15). By providing conditional responses, the State has left open and unanswered how it would determine issues critical to the interpretation of the 2020 Residency Prohibition Act in a specific instance. To take one example, the State has not specified whether a particular parcel is "typically used by students for school purposes," or how either of the sued agencies would make that determination, at the same time the State has made clear that such a determination as of a point in time would be essential for a Level III sex offender to decide whether it is legal for him/her to live (or remain living) in a specific place and for the State to decide whether to bring a felony prosecution. The State also argues that the boundary determinations Plaintiffs request call for expert analysis, that Plaintiffs have engaged a mapping expert and that the substantial burden of finding the boundaries to complete the map should rest on the class as the party with the burden of proof.

## II. Analysis and Rulings

I find that these Interrogatories ask questions that are crystal clear and seek information that is highly relevant to the claims and defenses in this case. Therefore, I overrule all of the

---

information that is irrelevant, not likely to lead to admissible evidence, and is protected by various privileges. As to Interrogatories 11 and 12, the State added the specific objection that the information is equally available to Plaintiffs or is already in Plaintiff's possession, custody, or control. As to Interrogatories 11, 12, and 14, the State added the specific objections that they call for speculation and a hypothetical response. As to Interrogatory 15, the State asserted that it called for an expert opinion. As to Interrogatories 14 and 15, the State also objected to the subparts as exceeding the limit of twenty-five in Fed. R. Civ. P. 33(a)(1) without obtaining leave of Court. The latter objection (to the number of subparts) was overruled at the hearing. In light of the relationship of the subparts to the highly relevant information sought by these Interrogatories, I decline to find that these subparts are nevertheless "discrete" as contemplated by the Rule. Alternatively, I rule that Plaintiffs now have leave of Court to propound the subparts as extra questions. This ruling is not intended to foreclose Plaintiffs from asking additional Interrogatories. In the interest of clarity for the parties as they proceed from here, I somewhat arbitrarily find that Plaintiffs may propound at least five more Interrogatories (with non-discrete subparts). If Plaintiffs find that more than five are necessary, they remain free to seek leave of Court.

State's General (and specific) Objections based on vagueness, irrelevancy, overbreadth and the unlikelihood of leading to admissible evidence.[4] Interrogatories 9 and 14 ask the State to set out the operative principles of interpretation that it will use in making boundary-to-boundary measurements to support SORNA notification and prosecutorial determinations as of the time of the Answer; this information is highly relevant. Interrogatories 11, 12 and 15 each ask for specific boundary determinations as of a fixed point in time, which Plaintiffs clarified at the hearing may be chosen by the State in fashioning its answers. There is nothing vague, unclear or overbroad about these inquiries.

As to the definition of "State" and "Defendants," I find that it does not render the Interrogatories improperly overbroad. Rather, with this definition, the Interrogatories simply require the two named agencies (the Office of the Attorney General and the Department of Corrections), which are tasked by the Act with aspects of its enforcement,[5] to respond with the information necessary to formulate answers that is accessible to them even though it is in the possession of other agencies of the State (such as the Department of Education and the Department of Children, Youth and Families).[6] The thrust of these Interrogatories is to require the State to provide the information needed to reach a clear answer regarding where a Level III sex offender may live without committing a felony, without regard to what State agency may be its custodian. To the extent that the sued agencies are unable to obtain access to the information

[4] The latter objection is no longer supported by Fed. R. Civ. P. 26(b)(1) and is also overruled on that basis.

[5] As alleged in the Second Amended Complaint, the Rhode Island Attorney General is responsible for enforcement, including bringing criminal prosecutions of the 2020 Residency Prohibition Act. ECF No. 49 ¶ 10. The Director of the Department of Corrections is responsible for Parole and Probation, which must notify individuals of their registration and residency obligations under SORNA, of which the Act is a part. Id. ¶ 11.

[6] Plaintiffs represent that this objection has already been overruled by the Court: during a 2016 hearing, the Court ordered the State to provide a list of all schools, even if that meant going to the Department of Education to get it. The State does not disagree that the Court issued such an oral order. Therefore, this argument is well founded and is an additional reason for overruling the overbreadth objection to the definition of "State" and "Defendants."

needed to determine a legally material (to the Act) boundary because necessary information is in the possession of another agency of the State (whether to answer these Interrogatories or in support of a SORNA notification or a SORNA prosecution pursuant to the Act), the State's responses must so state. That is, the identification of that problem with the Act's interpretation (if it is a problem) – that the prosecuting/enforcement agencies cannot access the information needed to ascertain whether a specific residence is impermissibly close to a school because it is in the exclusive possession of a different agency of the State – belongs in the answers to these Interrogatories, not in the State's Objections.

The State's objection based on privilege requires a more nuanced analysis. In light of the good faith that has characterized the State's approach to discovery in this case, I am not inclined blanketly to overrule its privilege objection. Rather, I direct the State to comply with the requirement of Fed. R. Civ. P. 26(b)(5)(A) that a privilege assertion must be coupled with a log of the specific items or information that have not been disclosed based on the claim of privilege, together with a statement of the precise privilege claimed presented in a manner to enable the party seeking the information to assess whether to bring a challenge. To the extent that the State's privilege-based objection is not supported as required by Fed. R. Civ. P. 26(b)(5)(A), it is overruled.

A pervasive problem raised by Plaintiffs in their motion is that the State provided answers cabined by the conjunction "if" and phrased in the conditional. As to Interrogatories 11, 12, and 14 this approach is buttressed by the objection that they call for speculation and are improper hypotheticals; as to Interrogatory 15, this approach is buttressed by the objection that it calls for an expert opinion. Plaintiffs ask that the State be directed to provide more responsive answers by shifting to the declarative and stating unconditionally what is the proper boundary

from which to measure. I agree. Interrogatories 11, 12, 14 and 15 do not call for speculation or expert opinions; to the contrary, they ask for the bottom-line factual information, focused on a point in time as to Interrogatories 11, 12 and 15. If this information is ascertainable only to a person of unspecified expertise – that is, that an ordinary person cannot ascertain these boundaries – that belongs in the answer. This is the same information that a Level III sex offender must be able to ascertain when looking for a place to live. It is the same information that RIDOC must use in supervising Level III sex offenders and that the Attorney General must use in deciding whether to bring a felony prosecution. The State must provide unconditional answers and cannot use objections or conditional responses to avoid such answers. If unconditional answers are impossible, the State must so state.

That leaves the State's burden objection. As to complete answers to Interrogatories 11 and 12 for Stage I, this objection is well-founded. The sheer number of schools and Level III sex offenders make this a gargantuan task, which will yield information that is not necessary for the Court to decide the vagueness challenge. Further, once the issue of vagueness is resolved during Stage I, so that <u>how</u> to draw boundaries to map the entire state is clear and unambiguous, but the burden of doing so remains great, the Court will need to step back and review what is proportional, taking into account the State's argument that Plaintiffs should shoulder the burden of proving their claims and that (assuming there are no ambiguities) their expert will be equally able to delineate the boundaries as will the State. Mindful of these considerations, I sustain the State's burden objection in part; I find that for Stage I (vagueness), the burden of complete answers to Interrogatories 11 and 12 is disproportional to the needs of the case. Instead, and based on the colloquy with the parties at the hearing, I order the State to provide a complete list of schools, with the address of each (or to confirm that the list already provided is complete), but

otherwise to answer now just as to ten schools[7] and ten Level III sex offenders, of which Plaintiffs may select five each and the State may select five each. As to whether the State must ever supply more complete responses to these Interrogatories, I find that it is premature to analyze the burden in light of what will be proportional at Stage II. Therefore, the State's obligation to provide more complete responses to Interrogatories 11 and 12 is stayed until the case reaches Stage II, following which, if Plaintiffs still believe they need this information, they must ask the Court to lift this stay and order the remaining discovery to be provided. The State may reassert its burden objection at that time.

Finally, the date of compliance with this Order was discussed with the parties during the hearing. Based on that colloquy, the Court orders that the State must provide more responsive answers in light of the rulings above (including a privilege log if applicable) by January 16, 2022.

## III. Conclusion

Based on the foregoing, Plaintiffs' motion to compel more responsive answers and to overrule objections (ECF No. 70) is granted, except to the extent that the motion seeks to compel complete responses (beyond a sampling of ten each) to Interrogatories 11 and 12, which aspect of the motion is stayed until the case reaches Stage II.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
November 16, 2021

[7] A clarification: the State's obligation to answer Interrogatory 15 remains unaltered. That is, the list of ten schools/ten Level III sex offenders to be provided as a partial response to Interrogatories 11 and 12 is in addition to the list of schools and Level III sex offender residences in Interrogatory 15.